# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# FORT HOOD DIVISION

| | |
|---|---|
| RADLEY BRADFORD, individually, and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>TABULA RASA HEALTHCARE GROUP, INC. d/b/a SINFONIARX,<br><br>   Defendant. | Case No. 4:20-cv-04066 |

## CLASS ACTION COMPLAINT

**NOW COMES** RADLEY BRADFORD, individually, and on behalf of all others similarly situated, through his undersigned counsel, complaining of TABULA RASA HEALTHCARE GROUP, INC. d/b/a SINFONIARX as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.,* 896 F.3d 728, 738-39 (6th Cir. 2018) *citing* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3. As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

6. RADLEY BRADFORD ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided in this federal jurisdiction.

7. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

8. TABULA RASA HEALTHCARE GROUP, INC. d/b/a SINFONIARX ("Defendant") is a healthcare company that offers consumers pharmaceutical and healthcare services.

9. Defendant maintains its headquarters at 228 Strawbridge Drive, Moorestown, New Jersey 08057.

10. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

## GENERAL ALLEGATIONS

11. Defendant develops marketing campaigns using a combination of sales channels, with an emphasis on outbound telemarketing.

12. Upon information and belief, Defendant utilizes third party vendors to market its pharmaceutical and healthcare services.

13. Defendant's vendors are essential to its telemarketing campaigns.

14. Defendant's ability to generate revenue depends significantly on its access to high-quality vendors.

15. Upon information and belief, Defendant's outbound telemarketing efforts include the use of an automatic telephone dialing system ("ATDS") to solicit consumers nationwide.

16. The Federal Trade Commission ("FTC") has held that a basic function of an ATDS is the ability to dial thousands of numbers in a short time period.

17. Upon information and belief, Defendant uses technology that has the capacity to produce telephone numbers using a random or sequential number generator in order to contact as many consumers as possible to market its services to.

18. An ATDS allows Defendant's telemarketing agents to only communicate with consumers who answer their phone.

19. Consequently, Defendant's unsolicited telemarketing calls shift the burden of wasted time to consumers.

## FACTUAL ALLEGATIONS

20. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 7679.

21. At all times relevant, Plaintiff's number ending in 7679 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

22. At all times relevant, Plaintiff was financially responsible for his cellular telephone equipment and services.

23. At all times relevant, Plaintiff was registered with the National Do Not Call Registry.

24. On November 13, 2020, Plaintiff received a solicitation call from Defendant.

25. Upon answering Defendant's solicitation call, Defendant's representative, Tracy, stated that she was a pharmacy technician calling at the request of Plaintiff's insurance provider, Aetna Medicare ("Aetna"), to discuss Plaintiff's medications with him.

26. Defendant's representative informed Plaintiff that she had a list of Plaintiff's medications and that she wanted to go over some information regarding Plaintiff's medication list.

27. Plaintiff was stunned to discover that Defendant had access to his private medical information, including information regarding his medications.

28. Plaintiff never provided Defendant with consent to obtain his private medical information from any source.

29. Defendant's representative provided a call back number of (844) 866-3735; however, Defendant was calling from the phone number (520) 494-3171, which Plaintiff's Caller ID identified as "Med Mgmt LLC."

30. After Defendant's representative provided a call back number, Plaintiff terminated the call.

31. After terminating the call, Plaintiff confirmed that the call back number of (844) 866-3735 belonged to Defendant as it matched the phone number on Defendant's website.

32. At no point in time did Plaintiff provide his cellular phone number to Defendant or otherwise consent to receive phone calls from Defendant.

33. Concerned about the release of his private medical information, Plaintiff contacted Aetna's customer service department to confirm that Aetna had no affiliation with Defendant.

34. During this phone call, Aetna advised Plaintiff that it has no affiliation with Defendant and that Aetna did not release any of Plaintiff's private medical information to Defendant.

35. Moreover, Aetna advised Plaintiff that it never provided Defendant with authority to call Plaintiff on its behalf for any reason.

36. On November 20, 2020, while he was eating dinner, Plaintiff received a spoofed phone call from Defendant and spoke with Defendant's representative, Marianna.[1]

37. While Plaintiff's phone was ringing, Plaintiff's Caller ID displayed that "Aetna" was calling from the phone number of (520) 494-3632.

38. During this call, Defendant's representative advised Plaintiff that Defendant was calling to discuss Plaintiff's medication list.

39. Plaintiff inquired whether Defendant was affiliated with his health insurance provider Aetna.

40. In response, Defendant's representative advised Plaintiff that Defendant was "not quite" affiliated with Aetna but that Defendant's business was "totally legit."

41. Plaintiff responded by asking Defendant's representative for her employee ID number.

42. In response, Defendant's representative stated she did not have an employee ID number and Plaintiff terminated the call.

43. After terminating the call, Plaintiff verified that the phone number listed on the Caller ID was in fact an Aetna number, thus confirming that Defendant was spoofing Aetna's number in an effort to deceive Plaintiff into believing that Defendant was contacting Plaintiff on behalf of Aetna.

44. Upon answering Defendant's calls, Plaintiff was greeted by a lengthy period of dead air and Plaintiff was required to say "hello" numerous times before being connected to a live representative.

---

[1] Spoofing is the act of disguising a communication from an unknown source as being from a known, trusted source.

45. Defendant's disturbing solicitation calls have disrupted Plaintiff's daily life and general well-being.

46. Defendant's invasive calls and and illegal telemarketing activities have caused Plaintiff actual harm, including but not limited to: invasion of privacy; nuisance; wasting Plaintiff's time; the increased risk of personal injury resulting from the distraction caused by unsolicited telemarketing phone calls; aggravation that accompanies unwanted telephone calls; emotional distress and mental anguish arising from the release of his private medical information; anxiety; loss of concentration; and the loss of battery charge.

47. Moreover, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's cellular phone such that Plaintiff was unable to receive other phone calls or otherwise utilize his cellular phone while his phone was ringing.

48. Concerned with Defendant's deceptive telemarketing practices, Plaintiff retained counsel to compel Defendant to cease its unlawful telemarketing practices.

## CLASS ALLEGATIONS

49. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

50. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All persons in the United States (a) to whom Defendant or a third party acting on Defendant's behalf, made one or more non-emergency phone call(s); (b) promoting Defendant's products or services; (c) to his/her cellular telephone number; (d) without his/her express written consent; (e) using an automatic telephone dialing system; (f) within the four years preceding the date of the filing of the original complaint through the date of class certification.

51. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

**A.     Numerosity**

52. Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

53. The exact number of the members of the Putative Class is unknown to Plaintiff at this time and will be determined through targeted discovery.

54. The members of the Putative Class are ascertainable because the Class is defined by reference to an objective criteria.

55. The members of the Putative Class are identifiable in that their names, addresses, and telephone numbers can be identified in business records maintained by Defendant.

**B.     Commonality and Predominance**

56. There are many questions of law and fact common to the claims of Plaintiff and members of the Putative Class.

57. Those questions predominate over any questions that may affect individual members of the Putative Class.

**C.     Typicality**

58. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class were harmed by Defendant's conduct and thus are entitled to damages as result of Defendant's conduct.

**D.     Superiority and Manageability**

59. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

60. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

61. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

62. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.     Adequate Representation**

63. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

64. Plaintiff has no interests antagonistic to those of the Putative Class and Defendant has no defenses unique to Plaintiff.

65. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

## CLAIMS FOR RELIEF

### COUNT I:
### Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq.*)
### (On behalf of Plaintiff and members of the Putative Class)

66. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

67. Among other things, the TCPA prohibits certain calls to wireless and residential numbers unless the caller has the prior express consent of the called party. 47 U.S.C. §227(b)(1)(A).

68. Under the TCPA consent rules, some types of calls require prior express written consent, while other types of calls do not require that the consent be in writing.

69. "Prior express written consent" is required for (a) all telemarketing/promotional calls/texts placed using an ATDS to wireless numbers, and (b) all artificial or prerecorded telemarketing/promotional voice calls to wireless and residential numbers.

70. The TCPA consent rules define "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

71. As pled above, Defendant placed or caused to be placed telemarketing calls, including but not limited to the aforementioned calls, to Plaintiff's cellular telephone, utilizing an ATDS without his express written consent in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

72. The TCPA defines ATDS as "equipment which has the *capacity*—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

73. Upon information and belief, based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used an ATDS to place calls to Plaintiff's cellular phone number.

74. Upon information and belief, the dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a lengthy dead air delay after the called party speaks into the phone.

75. As pled above, Plaintiff never provided Defendant with consent to place calls to his cellular phone.

76. As pled above, Aetna never provided Defendant with authorization or consent to place calls to Plaintiff's cellular phone on its behalf.

77. As pled above, Plaintiff was harmed by Defendant's telemarketing calls to his cellular phone.

78. Upon information and belief, Defendant knew its telemarketing practices were in violation of the TCPA yet continued to employ them to maximize profits.

79. As a result of Defendant's violations of the TCPA, Plaintiff and the members of the Putative Class are entitled to receive $500.00 in damages for each such violation.

80. As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and the members of the Putative Class are entitled to receive up to $1,500.00 in treble damages for each such violation.

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Putative Class, requests the following relief:

A. an order granting certification of the Putative Class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

B. an order finding that Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii);

C. an order enjoining Defendant from placing further violating calls to consumers;

D. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each such violation;

E. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each such violation; and

F. an award of such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Date: November 30, 2020                        Respectfully Submitted,

**RADLEY BRADFORD**

By: /s/ *Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
(630) 575-8180
mbadwan@sulaimanlaw.com